**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINE PANZARINO,<br><br>    Plaintiff,<br><br> v.<br><br>THE GOODKIND GROUP, LLC,<br>and YUKI TSAROYA, individually,<br><br>    Defendants. | **Docket No.**<br><br><br>**COMPLAINT** |

Plaintiff Christine Panzarino ("Panzarino" or "Plaintiff"), by her undersigned counsel, alleges the following which is based on personal knowledge and the investigation of counsel.

## NATURE OF THE ACTION

1. Panzarino brings this action against her former employer, Defendant The Goodkind Group, LLC, and its individual owner, Yuki Tsaroya (together "Goodkind" or "Defendant") after Goodkind fired Panzarino for taking medical leave to treat her known disability, which interfered with additional leave time and demonstrated their discriminatory perception of her known disability. Goodkind told Panzarino that she would be receiving FMLA paperwork for her medical leave needs, but then failed to provide the paperwork to Panzarino and fired her before she could utilize FMLA leave. During the termination meeting with Panzarino mere days after her hospitalization, Tsaroya said he "could not carry" Panzarino anymore, which was a direct reference to her request and need for medical leave and the disability she had reported to Defendants. Adding insult to injury, Defendant gave the false and damaging explanation that she was fired for not reporting in person to Goodkind's office even though Panzarino knew many colleagues who

worked predominantly virtually, like Panzarino, and were not fired, all of which continues to cause Plaintiff suffering and harm.

2.     This action is brought under the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA") for unlawfully (1) interfering with, restraining, or denying the exercise of, or the attempt to exercise, an FMLA right and (2) discriminating and/or retaliating against Plaintiff, in that Plaintiff was terminated mere days after requesting leave from Defendant to undergo and recover from a FMLA-covered surgical procedure.

3.     This action is also brought under New York State Executive Law §296 (the "New York State Human Rights Law" or "NYSHRL") for unlawful retaliation for a reasonable accommodation and the unlawful discrimination of Panzarino for her known disability.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. §2601, *et seq.,* 42 U.S.C. §12101, *et seq.*, and 28 U.S.C. §§1331 and 1343.

5.     The Court has jurisdiction over claims brought under New York State law pursuant to 28 U.S.C. §1367.

6.     Venue is proper in this District because Defendant's office where Plaintiff worked is located within the Eastern District of New York, and the events giving rise to Plaintiff's claims occurred in the Eastern District of New York, including Plaintiff's employment, and Defendant's interference with Plaintiff's request for medical leave, discrimination, and retaliation.

## PARTIES

7.     At all times relevant hereto, Plaintiff was an employee of Defendant, and her role reported to Defendant's office in Melville, New York.

2

8.     At all times relevant hereto, The Goodkind Group, LLC, is a limited liability company organized under the laws of the State of New York that is authorized and does business in the State of New York.

9.     The Doe Corporation Defendants are named herein as fictitious entities, as they are currently unknown (if they exist at all) and are other entities that may be liable to Plaintiff for the injuries set forth in this complaint and to which an amended complaint may be necessary.

10.    Defendant was Panzarino's employer within the meaning of the FMLA because it was engaged in commerce or in an industry affecting commerce who employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to seeking leave under the FMLA.

11.    At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, because she: (a) suffers from Atrial Fibrillation, a serious health condition as defined by the FMLA which necessitated FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to seeking to exercise her rights to FMLA leave.

12.    Defendant was also Panzarino's employer within the meaning of the NYSHRL.

**SUBSTANTIVE ALLEGATIONS**

13.     The Goodkind Group is an employment agency that connects individual candidates with roles at companies that are Goodkind clients.

14.    Plaintiff worked for The Goodkind Group as a recruiter from in or around August 10, 2020, until Defendants unlawfully terminated Plaintiff on May 19, 2023, in retaliation for her medical leave and their perception of her known disability.

15.     At all relevant times, Panzarino was fully qualified for her position as confirmed by, among other things, her almost thirty (30) years' experience as a recruiter.

16.     Notably, although Goodkind paid Panzarino a commission for the recruitments she completed, Goodkind did not assign Panzarino a recruitment quota or goal.

17.     On May 3, 2023, Panzarino was admitted to a local hospital and diagnosed with Atrial Fibrillation, a serious cardiological medical condition.

18.     Panzarino spent approximately eight (8) days in the hospital, where she underwent multiple medical procedures related to, and in response to, this new medical diagnosis and its symptoms.

19.     That same day, May 3, 2023, Panzarino (through her husband) first reported her diagnosis and disability, and that she had been admitted to the hospital and needed ongoing medical leave by email to Elizabeth Strocchia ("Strocchia"), Goodkind's Office Manager.

20.     On May 7, 2023, Panzarino updated Goodkind by email to Goodkind's Vice President of Human Resource, Kris Bryan ("Bryan"), stating that she was still recovering in the hospital because "they're trying to regulate my heart rate" and "[She] will be here tomorrow and "[she didn't] know be on (*sic)* that."

21.     Bryan responded that same day and said she was "including [the benefits team] so that they can get the FMLA paperwork started with you."

22.     The benefits team did not respond to Bryan's email, send FMLA application paperwork to Panzarino, or communicate with Panzarino in any way about her rights under the FMLA.

23.     Rather, Panzarino was forced to use personal days while she was hospitalized.

24.     She was discharged from the hospital on May 11, 2023, and returned to work on

May 12, 2023.

25.    Tsaroya fired Panzarino exactly one week later, on May 19, 2023.

26.    There was no "writing on the wall" related to Panzarino's termination. In fact, she was caught completely off guard and surprised.

27.    During his termination phone conversation with Panzarino, Tsaroya even admitted that Panzarino had been a good recruiter.

28.    Rather, Tsaroya told Panzarino that he and Goodkind "could not carry" her any further, which was a direct reference to the medical leave and diagnosis she had just reported to her employer.

29.    Tsaroya's callous explanation was especially shocking given the positive results Panzarino had earned for Goodkind over her years of service.

30.    Her termination also unlawfully retaliated against Panzarino for taking medical leave, and/or was in reckless disregard of the laws protecting her from Tsaroya's unlawful perception of Panzarino's ongoing medical condition and disability.

31.    Tsaroya also added a pretextual excuse for her termination, stating that Panzarino was being let go because she worked from home rather than come into the Goodkind Long Island office in person twice per week.

32.    Goodkind did not ask Panzarino to come into their office twice per week prior to her termination.

33.    Additionally, there were numerous other employees who reported into the New York office but worked remotely on an indefinite basis, including many employees who may still work there, such as Beth Ann Metro, Ellie Gianelli, Frank Marzi, Paula Geller, Crystal James, Stacy Rubin, and Christina Faraci. There may be other new remote hires as well.

34.     Upon information and belief, Panzarino was the only remote employee terminated for not coming into the Long Island office in person at the time of her termination.

35.     Tsaroya and Goodkind treated Panzarino less well than other similarly situated employees because of her leave, potential need for additional leave, and her diagnosis and disability, and Tsaroya's excuses have been and continue to be a clear pretext to mask his and Goodkind's discriminatory and retaliatory reasons for removing Panzarino from her role.

36.     As a result of Defendant's acts and conduct complained of herein, Panzarino has been harmed, including but not limited to a loss of income, wages, benefits and other compensation which such employment entails, as well as future pecuniary loss, and emotional distress, inconvenience, loss of enjoyment of life, humiliation and other non-pecuniary loss, all because of Defendant's actions.

37.     Defendant's actions were willful, malicious, outrageous, and conducted with full knowledge of the law, permitting Plaintiff to seek liquidated and punitive damages and look back to the fullest extent permitted by law to seek recourse for Defendant's unlawful actions.

### AS AND FOR A FIRST CAUSE OF ACTION
**FMLA: Interference**

38.     Plaintiff reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

39.     At all times relevant hereto, Plaintiff was protected by the FMLA.

40.     At all times relevant hereto, Defendant was Plaintiff's employer within the meaning of the FMLA.

41.     Section 2612(D) of the Family Medical Leave Act states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period

… Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

42.    Section 105 of the FMLA and Section 825.220 of the FMLA regulations prohibit, among other things, "interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right."

43.    Defendant acknowledged Plaintiff's need for FMLA leave in writing on May 7, 2023.

44.    At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

45.    At all times relevant hereto, and for purposes of the FMLA interference claim, Defendant interfered with Plaintiff at least because it did not provide necessary application paperwork to Plaintiff, and Defendant fired Plaintiff before she could use FMLA leave as entitled.

46.    As a result of Defendant's intentional, willful, and unlawful interference with Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

47.    As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages and the maximum compensation permissible under the FMLA.


### AS AND FOR A SECOND CAUSE OF ACTION
#### FMLA: Retaliation

48.    Plaintiff reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

49.    At all times relevant hereto, Plaintiff was protected by the FMLA.

50.     Section 2612(D) of the Family Medical Leave Act states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period … Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

51.     Section 105 of the FMLA and Section 825.220 of the FMLA regulations further prohibit, among other things, "discriminating or retaliating against an employee for having exercised or attempted to exercise any FMLA right."

52.     At all times relevant hereto, Defendant discriminated and/or retaliated against Plaintiff for the exercise of her FMLA rights, by refusing to provide the necessary request forms after she disclosed her need for leave that is protected by the FMLA.

53.     At all times relevant hereto, Plaintiff was protected from discrimination and retaliation under the FMLA.

54.     At all times relevant hereto, and for purposes of the FMLA discrimination and retaliation claim, Defendant acted with the intent to discriminate and retaliate against Plaintiff because Plaintiff exercised her rights to take approved leave pursuant to the FMLA.

55.     As a result of Defendant's intentional, willful, and unlawful acts by discriminating and retaliating against Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

56.     As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages and maximum compensation permissible under the FMLA.

### AS AND FOR A THIRD CAUSE OF ACTION
### NYSHRL: Disability Discrimination

57.     Plaintiff reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

58.     At all times relevant hereto, Plaintiff was in a protected class under the New York State Human Rights Law because of her disability.

59.     Up to and during the time of Goodkind's wrongful, unlawful and discriminatory conduct, Panzarino was fully qualified for and fully capable of performing her duties.

60.     Given the circumstances surrounding Goodkind's unlawful acts against Panzarino, including terminating Panzarino without warning mere days after disclosing her disability and medical treatment, there is a strong inference that the true motive for Goodkind's adverse employment actions against Panzarino was disability discrimination.

61.     The acts of Goodkind constitute unlawful discrimination against Panzarino in violation of Chapter 18, Article 15 of the New York State Executive Law §296(3) ("the NYSHRL"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice… (a) For an employer
> … because of a disability…of any individual, to discharge from
> employment such individual or to discriminate against such
> individual in compensation or in terms, conditions or privileges of
> employment.

62.     As a proximate result of Goodkind's conduct, Panzarino has been adversely affected in her employment and in her normal life's pursuits, and Panzarino was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated and demeaned, all because of Goodkind's discriminatory conduct in violation of Panzarino's human rights, all of which impacted upon her wellbeing and the quality of her life, all of which to be in an amount determined at trial.

63.     Goodkind, because of its violations of the NYSHRL, is also liable to Panzarino for punitive damages pursuant to §297(9) and reasonable attorneys' fees pursuant to §297(10), in addition to pre-judgment interest and costs.

64.    Here, Defendant's conduct towards Panzarino shows that it acted with willful and wanton negligence, or recklessness, or a conscious disregard of Panzarino's rights under the NYSHRL, or that its unlawful actions against Panzarino were so reckless as to amount to a disregard of Panzarino's rights, so that in addition to all the damages inflicted upon Panzarino and in addition to all measure of relief to which Panzarino may be properly entitled to herein, Goodkind should be responsible to pay punitive damages as punishment for its reprehensible conduct in the further amount to be determined at trial in order to deter Goodkind and others similarly situated from engaging in such conduct in the future.

65.    Panzarino, therefore, seeks judgment against Goodkind on this cause of action, including, among other things, for compensatory damages and punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order:

A.  Assuming jurisdiction over this action;

B.  Declaring that Defendant violated the FMLA and NYSHRL;

C.  Granting judgment to Plaintiff on her FMLA retaliation and NYSHRL discrimination claims and awarding compensatory damages equal to all lost wages, benefits and other monetary damages resulting from Defendant's unlawful interference, discrimination and retaliation of Plaintiff and to otherwise make

Plaintiff whole for any losses suffered as a result of these unlawful employment practices;

D. Granting judgment to Plaintiff and awarding her compensatory damages for emotional and mental distress, pain and suffering and injury to her reputation in an amount to be demonstrated at trial;

E. Awarding liquidated damages equal to any applicable compensatory awards herein;

F. Awarding punitive damages as allowed by law;

G. Granting pre- and post-judgment interest as allowed by law;

H. Granting Plaintiff his reasonable attorney's fees and costs as allowed by law; and

I. Any and all further relief that this Court determines to be just and appropriate.

DATED: October 7, 2024

**KOVEL LAW PLLC**

By: *s/ Daniel H. Kovel*
Daniel H. Kovel, Esq. (DK6676)
14 East 96th Street #3
New York, New York 10128
Telephone: (646) 397-1729
dkovel@kovel-law.com

*Attorneys for Plaintiff*